1997 WL 250458 \
(Cite as: 1997 WL 250458 (S.D.N.Y.)) \
C

Page 1

Only the Westlaw citation is currently available.

United States District Court, \
S.D. New York.

MENDEZ & DEJESUS GROCERY STORE, \
Plaintiff, \
v. \
The UNITED STATES DEPARTMENT OF \
AGRICULTURE, et al., Defendants.

No. 97 CIV. 1099(RO).

May 12, 1997.

*OPINION AND ORDER*

OWEN

*1 Before me is an order to show cause for a preliminary injunction and a TRO to enjoin the defendant United States Department of Agriculture ("USDA") from enforcing the withdrawal of an authorization for plaintiff grocery store to participate in the Food Stamp Program ("Program") by accepting food stamps from customers. On July 28, 1996, plaintiff received a letter dated July 25, 1996 from the USDA claiming that one of plaintiffs employees, identified only as "Johnny", had violated the Program's regulations by allowing customers to trade food stamps for cash [FN1] and for unauthorized items [FN2]. The letter stated that the penalty for accepting food stamps for unauthorized items is disqualification from the Program for six months while the penalty for trading food stamps for cash is permanent disqualification. [FN3] Attached to the letter was a copy of the relevant regulations. On August 7, plaintiff's counsel answered the allegations with a general denial, including the assertion that no one by the name of Johnny worked at the grocery store, and requested an extension to answer with more particularity, which was denied. On August 29, the USDA sent a letter to plaintiff and plaintiffs attorney stating that after reviewing all of the information and evidence, including plaintiff's letter of August 7, it had determined that plaintiff was permanently disqualified from the Program effective ten calendar days following plaintiffs receipt of the letter. The letter went on to say, "This determination will be final unless you submit a timely written request for review ... postmarked by midnight of the 10th calendar day after you receive this notice, in order to be considered timely." On September 6, plaintiff's attorney wrote to the USDA, "... respectfully requesting administrative review on the determination of the department on the disqualification from participation in the Food Stamp Program." On October 2 plaintiff's attorney wrote the USDA, again asking for administrative review, this time requesting that plaintiff be allowed to appear at the New York Regional office of the USDA, and also reiterating plaintiff's desire to qualify for a civil penalty instead of permanent disqualification. The USDA responded that the review officer was located in Virginia and the USDA did not have funds for him to travel to New York, but that in the alternative plaintiff and its counsel could appear by telephone conference or in person in Virginia. The letter also invited plaintiff to "submit any information he or she want[s] the review officer to consider in making a final decision." On December 23, the USDA sent a letter to plaintiff's attorney, which she received on December 28, upholding the initial decision to permanently disqualify the store from participation in the Program. The letter stated that the decision would become effective thirty days after plaintiff's receipt of the letter and that plaintiff had the right to judicial review of the determination by filing a complaint naming the United States as a defendant within thirty days of the receipt of the letter. The USDA sent plaintiff and its lawyer a letter on January 16, 1997, which counsel received on January 19, establishing the logistics for details such as plaintiff relinquishing to the USDA its authorization card and any unused stamps. On February 18, more than thirty days after plaintiff received notice of the final determination of disqualification, plaintiff filed the instant application and a complaint using a new attorney.

*2 Whatever the merits of this case--with some sympathy for plaintiff's plight--I have no jurisdiction to hear it. It is well established that the United States, having sovereign immunity, can only be sued with its consent *United States Dep't of Energy v. Ohio,* 503 U.S. 607, 615 (1! *Shoulders v. U.S.D.A.,* 878 F.2d 141, 143 (4th Cir.1989). Waivers of sovereign immunity should be strictly construed in favor of the Government so as not to extend the waiver beyond what Congress intended. *Block v. North Dakota* 461 U.S. 273, 287 (1983).

1997 WL 250458  
(Cite as: 1997 WL 250458, *2 (S.D.N.Y.))

Page 2

In this case, the United States chose to conditionally waive its immunity for a limited window of time, the condition being that Program participants file a complaint in the district court challenging the disqualification within thirty days of receipt of the notice of the final determination. 7 I §).C. 2023(a)(13). Several courts have held that this limited waiver of sovereign immunity should be strictly construed against the Program participant. *See, e.g., Shoulders*, 878 F.2d at 143-44 (affirming district court's dismissal of untimely suit to stay disqualification); *Calderon v. U.S.* 756 F.Supp. 181, 183 (D.N.J.1990) (dismissing suit for failure to name correct party and holding that "strict compliance with the precise terms of the congressional waiver [of sovereign immunity] is considered to be a jurisdictional requirement for the court to entertain the suit."); *Reason v. Heslin*, 723 F.Supp. 1309, 1311-12 (S.D.Ind.1989)(dismissing suit for lack of subject matter jurisdiction and holding that "[u]nless an exception to the time limit is written into the statute, this court cannot create one against the plain language of the law."); *Martin's Food and Liquor, Inc. v. U.S.D.,* 702 F.Supp. 215, 216 (N.D.Ill.1988)(refusing to allow amendment to complaint to add United States as a party because the request came two days after the statute of limitations had run).

At oral argument on the order to show cause, the Government presented me with several cases holding that the thirty day waiver of immunity in question here should be strictly construed. I gave plaintiff's counsel the opportunity at oral argument to examine these cases and I thereafter reserved decision so that he could research whether there was any way for me to exercise jurisdiction over the case even though the thirty days had passed. Neither plaintiff's counsel nor the court could find any decisions which permit me to exercise jurisdiction over such a case when it is not timely filed. In light of this, I deny the application and dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(h)(3). [FN4]

The foregoing is so ordered.

> FN1. The letter alleged that Johnny purchased $40 in food stamps for $28 in cash on one occasion and $50 in stamps for $35 in cash on another.

> FN2. These unauthorized items included bathroom tissue, Brillo soap pads, napkins and paper towels.

> FN3. The letter also notified plaintiff that the regulations allowed a monetary penalty to be substituted in lieu of permanent disqualification if certain conditions existed, including "substantial evidence that [plaintiff] had an effective policy and program in effect to prevent violations" and submission of a request for civil penalty with documentation, in person or by mail, within 10 days of the receipt of the letter. Plaintiff at first attempted to rest on its general denial in support of its request for a civil penalty. The USDA reiterated in its November 18 letter that plaintiff had not presented evidence of a policy to prevent violations within the allotted time. In a telephone conversation between the administrative review officer and plaintiff's counsel on December 4, the officer granted plaintiff's request to submit information in support of its eligibility for the civil penalty, giving plaintiff until December 13 to do so, even though the deadline for such submitting information had long since passed. Based on the information plaintiff provided, the officer determined that plaintiff did not meet three of the criteria for eligibility for a civil penalty.

> FN4. Rule 12(h) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

1997 WL 250458, 1997 WL 250458 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1998 WL 315346 (D.Minn.))

Page 3

C

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

UNITED STATES OF AMERICA, Plaintiff,
v.
Aron LANCMAN, Defendant.

No. Civ.4-95-880JRT/RLE.

Jan. 20, 1998.

ORDER and REPORT AND RECOMMENDATION

ERICKSON, Magistrate J.

I. *Introduction*

*1 This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (3), upon the parties' cross-Motions for Summary Judgment, and the Plaintiff's Motion to Strike.

A Hearing was conducted on August 27, 1997, at which the Plaintiff appeared by Mary Trippler, Assistant United States Attorney, and the Defendant appeared by Robert G. Davis, Esq. For reasons which follow, we recommend that Summary Judgment be granted in favor of the Plaintiff, and that the Defendant's Motion for Summary Judgment be denied.

II. *Factual and Procedural History*

During April of 1991, Aron Lancman ("Lancman") the owner of a grocery store in Saint Paul, Minnesota, repeatedly accepted food coupons in exchange for cash, in violation of Title 7 U.S.C § 2024(b). He was convicted, on June 23, 1993, of the unauthorized use and transfer of food coupons, under the Food Stamp Act. See *id*. On October 8, 1993, the United States Department of Agriculture ("USDA"), Food and Consumer Services Division ("FCS") formally determined that the Defendant was permanently disqualified from participation in the Federal Food Stamp Program, in accordance with 7 C.F.R. § 278.6(a). [FN1] FCS further informed the Defendant that, as provided by 7 §.F.R.

278.6(f)(2), [FN2] if he sold his store during the permanent disqualification period, he would be subject to a civil penalty in an amount "that reflects that portion of the disqualification period that has not expired. *Letter from Stavig to Lancman of October 8, 1993.*

On December 29, 1993, the Defendant transferred all rights and obligations under the store lease, the grocery store fixtures and other equipment, to Anouar Khamassi ("Khamassi") in exchange for $25,000. *Stavig Aff* Ex. C, D. Khamassi became authorized to accept food stamps on January 6, 1994. *Stavig Aff.* ¶ 3. Thereafter, on January 11, 1994, the field office of Food and Nutrition Services assessed a $30,000 penalty against the Defendant for violating the terms of 7 C.F.R §§ 278.6(f) and (g). *Stavig Aff* Ex.G *Letter from Stavig to Davis of January 11, 199*. According to John M. Heslin ("Heslin"), Chief of the Administrative Review Branch of FCS, this penalty was computed according to the following method:

> In this case, the average monthly redemption prior to the violation was $8,151. Accordingly, the calculation of the civil monetary penalty is: $8,151 x 10% x 240 months = $195,600. However, since the civil monetary penalty may not exceed $10,000 for each violation and because defendant had three violations, he was assessed $30,000.

*Heslin Aff.* ¶ 4; see, also, *7 C.F.R. § 278.6(g)*.

The Defendant appealed that determination to the Administrative Review officer, who affirmed the penalty assessment on April 5, 19 *Stavig Aff.* Ex.H, *Letter from Alexander to Davis of April 5, 1994.*

*2 The letter upholding the civil penalty informed the Defendant that, if he desired a judicial review of that determination, he had to file a Complaint in a United States District Court, or in any State Court of competent jurisdiction, within 30 days after his receipt of that letter. *Id.*; see, also, *Title 7 U.S.C. § 2023.* The Defendant received the letter on April 8, 1994, but elected not to seek judicial review of the penalty. On November 28, 1995, the Plaintiff filed suit to collect the $30,000 penalty, plus five percent interest. Notably, none of these facts are in dispute.

The Defendant, however, has submitted the Affidavit of his attorney, who explains that his

Case 3:03-cv-30295-KPN   Document 6-2   Filed 04/16/2004   Page 4 of 20

Not Reported in F.Supp.
(Cite as: 1998 WL 315346, *2 (D.Minn.))

Page 4

decision not to seek judicial review was in reliance upon statements which were allegedly made to him by the Administrative Review Officer, Wayne Alexander ("Alexander"), and Edward A. Hoffman, Associate Regional Attorney for the USD, *Davis Aff.* ¶ 3-6. [FN3] Plaintiff's counsel relates that, on February 4, 1994, during the pendency of the administrative review of the initial penalty assessment, Alexander stated that the Defendant's constitutional objections to the assessment were beyond the scope of the administrative review, and should be addressed to the USDA's legal counsel. *Davis Aff.* ¶ 3-4. The Defendant's counsel represents that, on May 9, 1994, when he contacted Hoffman, who was the USDA Regional Attorney, Hoffman told him that the "United States Attorney's office would 'probably disregard' the assessment as 'uncollectible.'" *Davis Af* ¶ 6. The Defendant maintains that, in reliance upon the USDA Regional Attorney's prediction, he elected to forego judicial review of the assessment. *Davis Aff.* ¶ 7.

In his Motion for Summary Judgment, and in his opposition to the Plaintiff's Motion for Summary Judgment, the Defendant challenges the constitutionality of the assessment of the civil penalty against him. He contends that the FCS, by imposing a civil penalty against him based upon conduct for which he had previously been subject to criminal punishment, violated the Double Jeopardy Clause of the Fifth Amendment. He also asserts that, in this instance, the $30,000 penalty is an "excessive fine" prohibited by the Eighth Amendment. Lastly, the Defendant argues that Title 7 U.S.C. § 2021(e), which authorizes the USDA to prohibit the transfer of ownership in a business, that has been disqualified from the Food Stamp Program, violates Article I, Clause 10 of the Constitution, by "impairing the Obligation of Contracts." The Plaintiff urges, in response, that we lack subject matter jurisdiction to review any of these issues, since the Defendant failed to appeal the decision of the Administrative Review Officer, as provided in Title 7 U.S.C. § 2023.

### III. *Discussion*

A. *Standard of Review* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue. *Lower Brule Sioux Tribe v. State of South Dakota*, 104 F.3d 1017, 1021 (8th Cir.1997), cert. denied, 522 U.S. 816, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986 *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996).

*3 As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e) Federal Rules of Civil Procedure* see als *Anderson v. Liberty Lobby, Inc.*, supra at 25( *Ivy v. Kimbrough* 115 F.3d 550, 551 (8th Cir.1937 *Thomas v. Runyon*, 108 F.3d 957, 959 (8th Cir.19 *Lower Brule Sioux Tribe v. State of South Dakota*, supra at 1021. Moreover, the movant is entitled to Summary Judgment where the non-moving party has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial. *Celotex Corp. v. Catre.* supra at 322; see also, *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir.199% *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 258 (8th Cir.199( *Phillips v. Marist Soc. of Washington Provinc.* 80 F.3d 274, 275 (8th Cir.1996). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323; see alsc *Bell Lumber and Pole Co. v. United States Fire Ins.* ( 60 F.3d 437, 441 (8th Cir.199ƒ *McLaughlinn v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross*, 992 F.3d 162, 163 (8th Cir.1993).

Not Reported in F.Supp.
(Cite as: 1998 WL 315346, *3 (D.Minn.))

Page 5

B. *Legal Analysis* Since the facts underlying this action are not in dispute, and the Defendant concedes that the $30,000 penalty assessed against him is authorized by the statute, the focus of our inquiry is properly narrowed to two threshold questions. First, we must determine whether the 30-day limitations period for a judicial review of the Administrative Review Officer's decision, can be equitably tolled because of the Defendant's purportedly justifiable reliance upon statements made by the Associate Regional Attorney of the USDA. If not, then we must address the Defendant's contention that, notwithstanding the closure of the limitations period, we retain jurisdiction to review the constitutionality of the assessment of the $30,000 civil penalty.

1. *Equitable Tolling* In opposing the Plaintiff's Motion for Summary Judgment, the Defendant contends that the Plaintiff should be estopped from contesting the Court's jurisdiction to review his constitutional challenges. This is because the Defendant claims to have neglected to seek judicial review, in reasonable reliance upon statements made by the Regional Counsel for the USDA. We find that, even assuming the existence of such equitable considerations, we lack the authority to modify, or to waive, the limitations period.

*4 a. *Standard of Review* Under Title 7 U.S.C § 2023, which provides for judicial review of administrative determinations under the Food Stamp Program, a person who is aggrieved by a final determination of the agency "may obtain judicial review thereof by filing a complaint against the United States **  *within 30 days after the date of delivery or service of the final notice of determination* upon it, requesting the court to se aside such determinatio *Title 7 U. §. 2023(a)(13)* [emphasis added]. As a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute *United States Dep't of Energy v. Ohio* 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (199 *United States v. Mitchell* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). In granting its consent to be sued, the United States may attach such conditions and limitations as it deems proper, and strict compliance with those conditions is an absolute requirement *Bellecourt v. United States*, 94 F.2d 427, 430 (8th Cir.1993). Indeed, waivers of sovereign immunity must be strictly construed in favor of the sovereign, and not enlarged beyond what the language requires *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); see, als *Bowen v. City of New York*, 476 U.S. 467, 479, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) *Block v. North Dako* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983).

In general, limitations periods for review of agency determinations, such as Section 2023(a), "are 'jurisdictional in nature, and may not be enlarged or altered by the courts.' *Edison Electric Institute v. EPA*, 996 F.2d 326, 331 (D.C.Cir.1993), citing *Natural Resources Defense Council v. N* 666 F.2d 595, 602 (D.C.Cir.1981); see, al *Florilli Corp. v. Pena*, 118 F.3d 1212, 1214 (8th Cir.1997) ("The sixty-day limitation on challenges to administrative rules under the Hobbs Act is a jurisdictional requirement that may not be waived or modified by this court." *United States Dep't of Agric. v. Kelly*, 38 F.3d 999, 1003 (8th Cir.1994); *Cruz v. INS* 4 F.3d 721, 722 (9th Cir.1993) (time limit for appeal from decision of Immigration Judge is "mandatory and jurisdictional").

On the other hand, Courts may apply traditional equitable tolling principles to statutory limitations provisions, where consistent with clear congressional intent. See, e.g *Bowen v. City of New York*, supra at 479 (statutory language of Title 42 U.S.C { 405(g) indicates that the limitations period is not jurisdictional, and may be equitably tolled). In any case, a waiver of immunity, "if it exists at all, should be sought in the statute giving rise to a cause of action. *Murray v. United States*, 686 F.2d 1320, 1325 (8th Cir.1982), cert. denied, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); see, also *Arneson v. Callaha* 128 F.3d 1243, 1246 (8th Cir.1997) (statutory waiver must be express). Moreover, in construing the terms and conditions of the Government's waiver of immunity from suit, "all doubts must be resolved in favor of the government.' *Palmer v. General Svc. Admin.*, 787 F.2d 300, 301 (8th Cir.1986). Thus, absent a manifest and unambiguous Congressional intent to the contrary, "a provision requiring an action for the review of a administrative determination to be brought within a specified time period is not simply a statute of limitations." *5 Wright and Miller § 1212*, p. 127. Rather, it defines the very boundaries of the Court's subject matter jurisdiction. *Id.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 3:03-cv-30295-KPN   Document 6-2   Filed 04/16/2004   Page 6 of 20

Not Reported in F.Supp.
(Cite as: 1998 WL 315346, *4 (D.Minn.))

Page 6

**\*5** The application of this principle to Title 7 U.S.C. § 2023(a) is a question of first impression in the Eighth Circuit. Elsewhere, a number of Courts have interpreted Section 2023(a) to be jurisdictional in nature and, therefore, not subject to equitable tolling. See, *Reason v. Heslin* 723 F.Supp. 1309, 1311-12 (S.D.Ind.1989) (30 day period may not be equitably tolled, "but is the very basis of Congress' grant of jurisdiction to parties suing the United States in this court." *Four Star Grocery, Inc. v. United Stat* 607 F.Supp. 1373, 1377 (S.D.N.Y.1985); *Mendez & DeJesus Grocery Store v. United States Dep't of Agric* 1997 WL 250458 at \*2 (S.D.N.Y.1997) (no set of circumstances would allow the Court to exercise jurisdiction over a late-filed challenge to disqualification from Food Stamp Program).

Other Courts have construed the 30-day limitations period to be jurisdictional, and yet they have allowed for the possibility of equitable tolling upon a proper factual showing. Se *Calderon v. United States Dep't of Agr* 756 F.Supp. 181, 186 (D.N.J.1990); *New Jersey Dep't of Human Svc. v. United Stat* 740 F.Supp. 1067, 1072 (D.N.J.1990). At the other end of the spectrum, at least one Court has held that it is entirely within the Court's discretion to equitably toll the limitations period provided in Section 2023(a). Se *Dunne v. United States Dep't of Agric.*, 1991 WL 42573 at \*2 (E.D.La.1991).

b. *Legal Analysis* Title 7 U.S.C § 2023(a) is a limited waiver of Federal sovereign immunity, whose terms convey no implication that the 30-day limitations period may be equitably tolled, or otherwise modified. Cf *Bowen v. City of New York*, supra at 476 (equitable tolling available under provision which allowed for judicial review "within 60 days of the Secretary's final decision or 'within such further time as the Secretary may allow.' "). We are inclined to agree with the holding i *Reason v.. Heslin* and reject the notion that we are empowered to abrogate the strictly delineated limits of our subject matter jurisdiction by equitably tolling the limitations period set forth in Section 2023(a).

We recognize that the District of New Jersey, in cases similar to this one, considered, but ultimately rejected, a suggestion that the time limit can be equitably tolled. Se *Calderon v. United States Dep't of Agric.*, supra at 186 *New Jersey Dep't of Human Svc. v. United States,* supra at 1072. In *New Jersey Dep't of Human Svc.*, the Court only rejected the merits of the equitable tolling argument as an alternative holding to its primary determination that, because the State did not file a timely appeal, "there exist[ed] no basis for the court to retain jurisdiction of th[e] matter.' *Id.* The *Calderon* decision, on the other hand, entertained the option of equitably modifying what it considered to be a jurisdictional limitation, but it did not support this approach with any detailed analysis, or with any attempt to reconcile that option with conflicting Supreme Court precedent.

**\*6** As to reasoning which led the Eastern District of Louisiana to hold that there is a rebuttable presumption that equitable tolling of the limitations period is available in suits against the United States, we respectfully disagree. S *Dunne v. United States Dep't of Agric.*, supra at \*2. The Court there based its holding, that Section 2023(a)'s limitations period may be equitably tolled, *Irwin v. Department of Veterans Affair* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), a case in which the Supreme Court considered the timeliness of an employee's lawsuit charging his Government employer with discrimination, in violation of Title VII of the Civil Rights Act of 196 *Title 42 U.S.C. § 2000e et seq.*

In *Irwin,* the Supreme Court found the lawsuit to be untimely but, nevertheless, tolled the limitations period. Writing for the Court, Justice Rehnquist held that the "rule of equitable tolling" applies "to suits against the Government, in the same way that it is applicable" to Title VII suits against private employers. *Id* at 94-95. The Court went on to conclude that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.,* at 95-96. Ir *Dunne,* the District Court simply extended this syllogism to actions which seek to set aside agency determinations—particularly those that are brought under Title 7 U.S.C. ¿ 2023 *Dunne v. United States Dep't of Agric.*, supra at \*2. In our view, however, the Supreme Court's reasonin¡ *Irw.* strongly suggests that its holding is limited to statutes which authorize similar actions against both private entities and the Federal Government. Indeed *United States v. Brockamp* 519 U.S. 347 117 S.Ct. 849, 850 (1997), the Supreme Court distinguishe *Irwin,*

Case 3:03-cv-30295-KPN   Document 6-2   Filed 04/16/2004   Page 7 of 20

Not Reported in F.Supp.
(Cite as: 1998 WL 315346, *6 (D.Minn.))

Page 7

and refused to allow the equitable tolling of the statutory limitations period on tax refund claims under Title 26 U.S 6511. Likewise, we conclude that there is no "rebuttable presumption" that the congressionally prescribed limitations periods, for the review of agency decisions, may be equitably tolled. Accordingly, we have no occasion here to waive, or to modify, the applicable requirements of Title 7 U.S.C. § 2023(a).

Moreover, even if the Congressional waiver of sovereign immunity allowed the Court to modify the limitations period, we would not be inclined to do so under these circumstances. The Defendant suggests that his decision, to not seek judicial review of the $30,000 penalty levied against him, was in reliance upon Hoffman's representations that the United States Attorney's office would " 'probably disregard' the assessment as 'uncollectible.' " While we express no opinion as to what showing, under these circumstances, would establish the Defendant's right to avoid the preclusion imposed by the limitations period, we express considerable doubt that a hedging, indefinite forecast by a USDA Attorney, who does not have direct authority over the collection action, would be adequate grounds for justifiable reliance. Accordingly, we conclude that equitable tolling does not apply here.

*7 2 *Foreclosure of Constitutional Revie* The Defendant maintains that, in any event, application of the time-bar in Section 2023(a) is not fatal to his defense to the Plaintiff's collection action because this Court retains the inherent jurisdiction to decide constitutional questions that have not been previously reviewed. In an effort to flesh out this pivotal contention, we permitted the parties to file supplemental memoranda of law, addressing the question of whether the Court should here presume the existence of judicial review of Constitutional, questions which would otherwise be precluded by Section 2023(a). We conclude that our review of the Defendant's contentions is precluded, in spite of the constitutional tenor.

a. *Standard of Review* As the Supreme Court has often noted in recent years, serious constitutional questions would arise if a statute were construed to foreclose constitutional review of agency actions. See, *Thunder Basis Coal Co. v. Rei* 510 U.S. 200, 215, n. 20, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994); *Webster v. Do* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (19 *Bowen v. Michigan Academy of Family Physician* 476 U.S. 667, 681, n. 12, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); *Califano v. Sanders* 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (197( *Weinberger v. Salfi,* 422 U.S. 749, 762, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1976) (reading statute to preclude all judicial review "would have raised a serious constitutional question of the validity of the statute as so construed." *Oestereich v. Selective Serv. System Local Bd. No. 14,* 393 U.S. 233, 243-44, n. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring) (it is "doubtful whether any person may be deprived of his personal liberty without the prior opportunity to be heard by some tribunal competent to fully adjudicate his claims.' *Yakus v. United States,* 321 U.S. 414, 435, 64 S.Ct. 660, 88 L.Ed. 834 (1944) *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 84, 56 S.Ct. 720, 80 L.Ed. 1033 (1936) (Brandeis, J., concurring) ("the person asserting a right, whatever its source, should be entitled to the independent judgment of a court on the ultimate question of constitutionality."); but cf., *Lauf v. E.G. Shinner & Co.,* 303 U.S. 323, 330, 58 S.Ct. 578, 82 L.Ed. 872 (1938) ("There can be no question of the power of Congress thus to define and limit the--jurisdiction of the inferior courts of the United States.").

To avoid these questions, the Supreme Court has held that, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe,* supra at 603, citing *Johnson v. Robiso* 415 U.S. 361, 373-74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); see, also, *Weinberger v. Salfi,* supra at 762. Accordingly, the judiciary has frequently narrowly construed Federal statutes which have appeared to preclude judicial review of constitutional questions. See, e.g., *Webster v. Doe* supra at 603 *Bowen v. Michigan Academy of Family Physician.* supra *Califano v. Sanders,* supra at 109 (dictum suggesting that Secretary of Social Security Administration's denial of petition to reopen claim can be challenged on constitutional grounds, even though it is not a "final decision" for which judicial review has been made available).

*8 The application of a statute of limitations, even to constitutional claims, does not raise such concerns. It is well-settled that "[a] constitutional claim can become time-barred just as any other

Case 3:03-cv-30295-KPN   Document 6-2   Filed 04/16/2004   Page 8 of 20

Not Reported in F.Supp.
(Cite as: 1998 WL 315346, *8 (D.Minn.))

Page 8

claim can," as "[n]othing in the Constitution requires otherwise." *Block v. North Dakota,* supra at 292 [citations omitted]; see, also, *Missouri v. United States,* 109 F.3d 440, 441 (8th Cir.1997) ("We see no reason why constitutional challenges to [agency] action under the [applicable statute] should lie outside that statute's explicit jurisdictional command simply because they arise under the Constitution.") citing *Thunder Basin Coal Co. v. Rei* supra at 214-15. If a petition for review of an administrative decision is "not timely filed, [the] court has no jurisdiction to review even constitutional challenges" to it. *Western Nebraska Resources Council v. EPA,* 793 F.2d 194, 198 (8th Cir.1986) (declining to consider the merits of late-filed petition for review of Government action), citing *Lloyd A. Fry Roofing Co. v. United States Environmental Protection Agency,* 554 F.2d 885, 892 (8th Cir.1977); see, also, *Petrotech Trading Co. v. United Stat* 985 F.2d 1072, 1074 (Temp.Emer.Ct.App.1993); *United States v. Howard Elect Co* 798 F.2d 392, 395 (10th Cir.1986).

b. *Legal Analysis.* Far from foreclosing all judicial review of FCS decisions, Congress has allowed for "*de nov* " review, "in which the court shall determine the validity of the questioned administrative action in issue *Title 7 U.S. § 2023(a)(15),* so long as such review is applied for within 30 days of service of final notice of the decision. *Title 7 U.S.C § 2023(a)(13).* There is no suggestion, in the Record before us, that the 30-day time limit has denied the Defendant the due process of law. Cf., *Western Nebraska Resources Council v. EPA,* supra at 198 ("Without question, the 45-day limitation *** provided [the plaintiff] with a meaningful opportunity to seek review of the agency's action--due process requires no more.").

This case, although arising under a different statutory framework, is circumstantially similar to that presented to the United States Temporary Emergency Court of Appeals : *Petrotech Trading Co. v. United State* There, the Federal Energy Regulatory Commission ("FERC") had found Petrotech to have violated Federal Regulations by overcharging for crude oi *Id.* at 1073. As here, Petrotech failed to initiate judicial review within the statutorily prescribed time period--instead opting to raise their constitutional defenses in opposition to any enforcement action by the Department of Energy. *Id.* When faced with arguments similar to those now made by the Defendant, the Court distinguished the cases which suggest that Congress may not preclude constitutional review of agency actions, by recognizing that the defendants "were not deprived of the right to challenge an agency action," and that no constitutional concerns were implicated by the application of a time-bar even to constitutional claims. *Id.* at 274.

*9 We find this analysis persuasive, and consonant with Supreme Court precedent. Since the Defendant was afforded a meaningful opportunity to adjudicate the merits of his challenge to the assessment made against him, there is nothing inherent in the constitutional nature of those challenges, which would compel us to insulate them from the strict application of a limitations period. See *Missouri v. United States,* supra at 441.

Therefore, we conclude that we are not jurisdictionally authorized to address the merits of the Defendant's opposition to this action, as it is not properly before the Court [FN4] and, of necessity, we recommend that Summary Judgment be granted in favor of the Plaintiff, and that the Defendant's Motion for Summary Judgment be denied.

NOW, THEREFORE, It is--

ORDERED:

1. That the Plaintiff's Motion to Strike [Docket No. 21] is GRANTED, in part, and DENIED, in part.

AND, It is--

RECOMMENDED:

1. That the Plaintiff's Motion for Summary Judgment [Docket No. 19] be granted.

2. That the Defendant's Motion for Summary Judgment [Docket No. 16] be denied.

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than February 6, 1998, a writing which specifically

Case 3:03-cv-30295-KPN    Document 6-2    Filed 04/16/2004    Page 9 of 20

Not Reported in F.Supp.                                                                                     Page 9
(Cite as: 1998 WL 315346, *9 (D.Minn.))

identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall, operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than February 6, 1998, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C § 636 to review the transcript in order to resolve all of the objections made.

> FN4. As our own Court of Appeals has explained:
> The power to decide constitutional issues is a delicate one. It is reserved for those cases where the answer to the constitutional question makes a real difference to a person before the court. We do not sit to decide merely abstract questions, especially where the Constitution is concerned.
> *Burks-Marshall v. Shalala* 7 F.3d 1346, 1349-50 (8th Cir.1994).
> The Defendant's constitutional arguments strike at the very heart of the enforcement mechanism of the Food Stamp Program. To stay within the bounds of Article III, we will express no opinion on such weighty constitutional issues, in the absence of jurisdiction to properly do so.
>
> FN1. According to the Code of Federal Regulations, the Department o Agriculture, Food and Consumer Services Division ("FCS") may
> disqualify any authorized retail food store or authorized wholesale food concern from further participation in the program if the firm fails to comply with the Food Stamp Act or this part. Disqualification shall be *** permanent for a firm's third sanction or a disqualification based on trafficking as defined in § 271.2.
> 7 C.F.R. § 278.6.
> Under this provision, FCS may disqualify an authorized business where its owner, or any of its employees, have trafficked in food stamps. See, e.g., *Corder v. United States* 107 F.3d 595, 597 (8th Cir.1937) *Kim v. United Stat.* 121 F.3d 1269, 1273 (9th Cir.1997 *Bakal Bros., Inc. v. United States,* 105 F.3d 1085, 1088 (6th Cir.1997).
>
> FN2. 7 C.F.R. § 278.6(f)(2) provides, in pertinent part, as follows:
> In the event any retail food store or wholesale food concern is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or other legal entity who sells or otherwise transfers ownership of the retail food store or wholesale food concern shall be subjected to and liable for a civil money penalty in an amount to reflect that portion of the disqualification period that has not expired, to be calculated using the method found a § 278.6(g). If the retail food store or wholesale food concern has been permanently disqualified, the civil money penalty shall be double the penalty for a ten year disqualification period.
>
> FN3. The Plaintiff has moved, pursuant to Rule 56(e), Federal Rules of Civil Procedure, to strike paragraphs four, six, and eight of the Davis Affidavit. We grant the Motion, only with respect to paragraph eight, and we deny it with respect to the other challenged factual averments. Rule 56(e) mandates that, upon a Motion for Summary Judgment, supporting and opposing affidavits may only set forth "such facts as would be admissible in evidence." The Plaintiff has objected to our consideration of all of the statements that were assertedly made to counsel by representatives of the USDA--as contained in paragraphs four and six--on the ground that they are inadmissible as both hearsay, and as irrelevant. We disagree.
> Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Rule 801(c), Federal Rules of Evidence.* Hearsay statements are inadmissible, except as specifically provided by the Federal Rules of Evidence, rules prescribed by the Supreme Court, or an Act of Congress *Rule 802, Federal Rules of Evidence.* The Plaintiff h forcefully contended that these statements, made by Government officers, do not constitute, under Rule 801(d)(2)(D) , admissions of the United States, because they were not made by persons with authority to bind the government. See, *Frey v. Department of Health and Human Ser* 106 F.R.D. 32 (E.D.N.Y.1985). While the argument may well be true, it is clear that the Defendant is not offering these statements to prove the truth of these representations but, rather, to establish grounds for the Defendant's reliance upon them. Cf *Wolff v. Brown,* 128 F.3d 682, 685 (8th Cir.1997) internal documents relied upon by employer are not hearsay, because they are offered to explain the employer's conduct): *United States v. Anos* 356 F.2d 413, 418 (7th Cir.1966) (statements offered to show basis for reliance not hearsay). Necessarily, the Defendant's contentions rely upon t *falsity,* and not the truth, of Hoffman's statements, in order to show that the Defendant was misled. Therefore, these statements are not inadmissible hearsay.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.   **Page 10**
(Cite as: 1998 WL 315346, *9 (D.Minn.))

Since equitable circumstances, such as misleading conduct by the Government, may serve to toll the statute of limitations for review of administrative determinations, we cannot conclude that paragraphs four and six of Davis' Affidavit are irrelevant. Cf., *Turner v. Bow,* 862 F.2d 708, 710 (8th Cir.1988) (in review of administrative law determination, misleading conduct, by someone other than the claimant may toll limitations period); *Calderon v. United States Dep't of Agric., Food and Nutrition Svc,* 756 F.Supp. 181, 186 (D.N.J.1990) (applying equitable tolling standard to late-filed challenge under Title 7 U.S.C § 2023). Choosing to err on the side of caution, we believe that the question of whether we may, or shall, toll the limitations period is most appropriately addressed in the context of the Motion for Summary Judgment. Accordingly, we grant the Plaintiff's Motion to Strike only with respect to paragraph eight of the Davis Affidavit, which is nothing more than a legal conclusion that the Plaintiff should be equitably estopped from asserting the limitations period.

1998 WL 315346 (D.Minn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

June 2, 2003

United States Department of Agriculture
10 Causeway Street, Room 501
Boston, MA 02222

Re: Oscar Reyes and
    Osqui Supermarket

To Whom It May Concern:

I hereby authorize you to communicate with Michael J. Moriarty, Esq., Ducharme, Moriarty & Turcotte whose office is located at 245 High Street, Holyoke, MA any and all matters related to me or my business Osqui Supermarket located at 696 Dwight Street, Holyoke, MA. I further authorize you to release any and all records he may request regarding my business or me personally.

Your anticipated cooperation is appreciated.

Very truly yours,

Oscar Reyes

GOVERNMENT EXHIBIT 1

## LAW OFFICES OF
## DUCHARME, MORIARTY and TURCOTTE
245 High Street
Holyoke, Massachusetts 01040
(413) 536-3330
Fax (413) 536-0134
E-Mail attysdmt@hge.net

Neil J. Moriarty, Jr.
Susan M. Turcotte
Michael J. Moriarty
John J. O'Neill

Clement E. Ducharme (1916-1959)
Neil J. Moriarty (1923-1959)
Fernand R. Ducharme (1929-1995)

June 2, 2003

*RECEIVED JUN 0 4 2003*

Robert Hughes
United States department of Agriculture
Food and Nutrition Service
279 Pleasant St., Room 200
Concord, NH 03301

RE:  Oscar Reyes; Osqui Supermarket
     696 Dwight Street; Holyoke, MA 01040

Dear Mr. Hughes,

Please be advised that this firm represents Oscar Reyes and his business, Osqui Supermarket, relative to his participation in the Food Stamp Program.

This letter is in response to your May 21, 2003 notice that my client is being considered for disqualification from the Food Stamp Program.

Please note that Mr. Reyes was disqualified on the basis of allegations of *de minimus* violations of WIC rules, suggesting that employees overcharged on three occasions, involving six items of a total value of less than $20.00. Please note also that he the alleged violations were first brought to his attention on August 31, 1999. In the nearly four years since, Mr. Reyes has been an ongoing participant in the Food Stamp Program without any incident or allegation of any impropriety. Please further note that the decision of the Massachusetts Superior Court was rendered shortly after the three year period of disqualification imposed by the Massachusetts WIC Program ended. The issue being moot, Mr. Reyes saw no sense in committing resources to an appeal.

Mr. Reyes has asserted that even if people in his employ had committed the alleged violations, the penalty imposed was unreasonable. He objected to several improprieties at hearing, including being denied an opportunity to face at hearing the paid compliance checker reporting the violations; spoilation of evidence (the items allegedly purchased were disposed of prior to Mr. Reyes' notification of the allegations); failure to promptly notify him of the allegations (thereby denying him the chance to resolve any improper or erroneous acts committed

by employees); and the failure of the Massachusetts WIC Program to offer any training or other programmatic solutions to the dispute, although the same is promised in the WIC vendor Agreement. At hearing, the Compliance Checker revealed that on at least three occasions, she had made purchases at the store where no violation occurred. Mr. Reyes presented evidence at hearing that he was absent from the store at the time of at least two of the alleged violations.

Mr. Reyes strongly suggests that the penalty imposed by WIC, in light of the foregoing, was excessive, and that additional penalization by the Food Stamp Program furthers no purpose beneficial to the Food Stamp Program and would constitute a serious injustice to my client. Mr. Reyes' business is a valuable and needed service for many food stamps households in the high poverty area in which his store is located. On information and belief, disqualification would constitute a hardship for participating food stamp households pursuant to Food Stamp Regulations at §278.6(e)(8)(ii). Further, my client is without information that a signed and dated notice of proposed disqualification from WIC was provided to your agency in a timely manner as required by §278.6(e)(8)(ii)(B).

In support of the forgoing, a copy of the transcript and administrative record in the underlying matter in provided. On behalf of Mr. Reyes, we request that no adverse action be taken. Such a decision is supported by the facts on the basis of equitable considerations and Food Stamp Regulations as cited herein. In the alternative, we request that the imposition of a civil money penalty in lieu of disqualification be considered, in an amount commiserate with the *de minimus* nature of the charge and in recognition of Mr. Reyes' long standing participation in the Food Stamp Program without incident.

I am available for any further discussion or clarification of the facts herein as you may find useful. Any opportunity to have a dialogue about the merits of this matter, including the need for or scope of penalties the Food Stamp Program considers imposing, would be greatly appreciated.

Very truly yours,

Michael J. Moriarty

enclosure
facsimile transmission with hard copy to follow

cc: Oscar Reyes

June 12, 2003

United States
Department of
Agriculture

Food and
Nutrition
Service

Oscar Reyes, Owner
Osqui Supermarket
696 Dwight Street
Holyoke, MA 01040

Dear Mr. Reyes:

Your firm has been disqualified from the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC). You were informed of a possible reciprocal Food Stamp Program (FSP) disqualification as a result of the WIC disqualification action. All opportunities for appeal of the WIC State agency action have been exhausted or have expired.

Therefore, in accordance with section 278.6(e)(8)(iii) of the FSP regulations, your firm shall be disqualified from the Food Stamp Program for a period of three years. This determination is final and is not subject to administrative review.

This disqualification will become effective on the 10th calendar day following your receipt of this letter. If the 10th calendar day is a Saturday, Sunday or legal (Federal) holiday, the disqualification will be effective the next day which is not a Saturday, Sunday or legal (Federal) holiday.

Your authorization card, number 3183181, and all program materials must be returned to this office. Your Electronic Benefit Transfer (EBT) processor will be advised to disable your EBT connection. Your EBT machine should be returned to your EBT vendor. If it is determined that you accepted food stamp benefits after the effective date of disqualification, you will be subject to a severe monetary fine per section 278.6(m) of the FSP regulations and possible prosecution under applicable penal statutes.

We considered your eligibility for a civil money penalty (CMP) according to the terms of section 278.6(f)(1) of the FSP regulations (enclosed). We have determined that you are not eligible for a CMP because there are other authorized retail stores in the area selling a variety of staple foods at comparable prices. However, appeal rights are available regarding your firm's eligibility for a hardship CMP. To file an appeal you must submit a written request for review to the Director, Administrative Review Staff, USDA, FNS, 3101 Park Center Drive, Room 608, Alexandria, Virginia 22302. Your request for review must be postmarked by midnight of the 10th calendar day after you receive this letter, in order to be considered timely. If the 10th day of the period for requesting review falls on a Saturday, Sunday or legal (Federal) holiday, as specified in section 279.5 of the FSP regulations, a request for review will be timely if it is postmarked the next day which is not a Saturday, Sunday or legal (Federal) holiday. The rules governing your review rights are contained in Section 278.8 and Part 279 of the FSP regulations.

If a timely request for review is made, you may continue to accept and redeem food stamp benefits until the review officer has made a decision on your request.

AN EQUAL OPPORTUNITY EMPLOYER


GOVERNMENT EXHIBIT 2

This determination shall not preclude the Department of Agriculture or any other agency or department of the United States from taking further action to collect any claim determined under FSP regulations or under any other pertinent statutes or regulations, nor shall this determination preclude prosecution under any applicable penal statutes.

In the event that you sell or transfer ownership of your store subsequent to your disqualification, you will be subject to and liable for a CMP as provided by FSP regulations sections 278.6(f)(2), (3), and (4). The amount of this sale or transfer CMP will be calculated based on FSP regulations 278.6(g).

You may apply for authorization at the end of your disqualification period. You will be required to submit a collateral bond or irrevocable letter of credit in the amount of $1,340.

Si usted tiene dificultad entendiendo esta carta debido a falta de conocimiento del idioma inglés, llame a nuestra oficina al número: (617) 565-6380 inmediatamente. Nosotros le explicaremos o traduciremos el contenido.

Sincerely,

Robert Hughes
Officer-in-Charge
NH, VT and CT

Enclosure

cc: Michael Moriarty, Esq.   Fedex 6/12

**USDA**

United States
Department of
Agriculture

Office of the
General
Counsel

P.O. Box 1134
Harrisburg, PA 17018
(717) 221-3713   3799
Fax: (717) 221-3443

February 25, 2004

To:   AUSA Karen Goodwin
      Fax no. 413-785-0394

From: Lynn Ahwesh

Re:   Osqui Supermarket/Oscar Reyes

Number of pages, including this one:   6

Here are the 3 exhibits to accompany the motion to dismiss.

TC Lynn Ahwesh - complaint filed too late

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. Michael J. Moriarty
Attorney at Law
245 High Street
Holyoke, MA 01040

OCT 24 2003

RE: Osqui Supermarket - Holyoke

Dear Mr. Moriarty:

This letter is to inform you of my determination following an administrative review of the initial decision by the Northeast Regional Office of the Food and Nutrition Service to withdraw the authorization of your client's store to participate in the Food Stamp Program as a retailer.

The information in the file indicates that the owner was notified in a letter dated May 22, 2003, that the store was being considered for disqualification from participation in the Food Stamp Program. This decision was based on the fact that the store had been disqualified from the Special Supplemental Food Program for Women, Infants and Children (WIC) for a period of 3 years. Your client was given the opportunity to present data to support a determination that it would be a hardship to food stamp recipients if the store were disqualified from the Food Stamp Program.

The Regional Office subsequently wrote to your client indicating that a hardship civil money penalty was not warranted since there are several other stores nearby where food stamp recipients could shop. You wrote to this office requesting a review of the initial decision of the Regional Office and I responded to your letter. You stated that it would indeed be a hardship for food stamp recipients who shop at the store to shop at other stores. You also submitted data to demonstrate that there are a high percentage of needy people in the area served by the market. Furthermore, you pointed out that your client's store is open on Sunday and late at night and other stores in the area are not.

After reviewing the administrative file I had concluded that your client should be granted a civil money penalty in lieu of the 3-year period of disqualification. As I indicated to you in our recent telephone conversation, the amount of the penalty is established in the law and regulations governing the Food Stamp Program. The calculation is based on the average monthly redemptions multiplied by a factor of 10 and the resulting figure is multiplied by the number of months of the disqualification. In this case the figure is $44,000. However, the civil money penalty cannot exceed $11,000 per violation. According to the file there was a


GOVERNMENT EXHIBIT
3

2

pattern established for class 1 violations of the WIC program. Therefore, the amount of the hardship civil money penalty is $11,000. The Regional Office will contact you and your client about payment of the penalty.

Your attention is called to Section 14 of the Food Stamp Act (7 U.S.C. 2023) and to Section 279.10 of the regulations (7 C.F.R. 279.10) with respect to your client's right to a judicial review of this determination. Please note that if a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which he resides or is engaged in business, or in any court of record of the State having competent jurisdiction. If any such complaint is filed, it must be filed within 30 days of receipt of this letter.

Sincerely,

BEVERLY KING
Administrative Review Officer
Food and Nutrition Service

cc: Northeast Regional Office







# Track & Confirm

**Current Status**

You entered 7002 0460 0001 7268 6656

Your item was delivered at 12:12 pm on October 30, 2003 in HOLYOKE, MA 01040.

*Shipment Details >*

**Track & Confirm**
Enter label number:

**Track & Confirm FAQs**  *Go >*



POSTAL INSPECTORS
Preserving the Trust

site map  contact us  government services
Copyright © 1999-2002 USPS. All Rights Reserved. Terms of Use  Privacy Policy